IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MAURICE J. McDONALD, # B-42547,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Case No. 12-cv-1183-JPG** |
| ) | |
| **LUCAS T. MAUE, TIM VEATH,** ) | |
| **MIHN SCOTT, LT. MENARD,** ) | |
| **ADJUSTMENT COMMITTEE,** ) | |
| **M. ATCHINSON, S.A. GODINEZ,** ) | |
| **DR. SHEPARD, MENARD HEALTH** ) | |
| **CARE SERVICES UNIT, and** ) | |
| **ILLINOIS DEPT. of CORRECTIONS,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving a life sentence for murder. Plaintiff claims that certain Defendants were deliberately indifferent to his serious medical condition, by their failure to comply with his post-surgery medical orders restricting his physical activity in order to avoid serious bleeding complications. He seeks damages, and requests the Court to issue a Temporary Restraining Order ("TRO") and preliminary injunction to protect him from future harm (Doc. 1, p. 23). Prior to filing this action, Plaintiff had "struck out" by having more than three lawsuits dismissed as frivolous, malicious, or for failure to state a claim.[1] *See* 28

---

[1] Plaintiff's strikes in this Court include *McDonald v. Porter*, Case No. 08-cv-342-GPM, 2009 WL 426294 (S.D. Ill., dismissed Feb. 20, 2009); *McDonald v. Feinerman*, Case No. 08-cv-395-GPM, 2009 WL 648652 (S.D. Ill., dismissed March 12, 2009); *McDonald v. Payne*, Case No. 08-cv-921-DRH (S.D. Ill., dismissed July 27, 2009). His many other strikes, starting in 1992, are enumerated in *McDonald v. Sacks*, Case No. 12-cv-576 (N.D. Ill., dismissed Feb. 29, 2012, Doc. 4).

U.S.C. § 1915(g). [2]  However, he asserts that he should be allowed to proceed in this action without full prepayment of the filing fee because he is under imminent danger of serious physical injury.

More specifically, Plaintiff explains that he underwent hip surgery on October 9, 2012, during which an "angio-seal" was implanted in his femoral (thigh) artery (Doc. 1, p. 16).  The surgeon instructed that Plaintiff was to refrain from any strenuous activity for 90 days, including no walking for long distances and no climbing stairs, and was to have the use of a wheelchair (Doc. 1, pp. 11, 16, 29).  If the angio-seal were to become dislodged, Plaintiff could suffer fatal bleeding.  Defendant Dr. Shepard failed to alert correctional staff of Plaintiff's special medical needs (Doc. 1, pp. 5, 21).  When Plaintiff returned from the hospital on October 9, he was refused a wheelchair.

Plaintiff complains at length about Defendant Maue (a correctional officer).  At some point, apparently well before Plaintiff's operations, Defendant Maue grabbed and fondled Plaintiff's genitals while searching him (Doc. 1, pp. 5, 13, 16, 20).  Defendant Maue had also harassed Plaintiff with racially disparaging language, and Plaintiff had seen him beat, grab, and drag other inmates (Doc. 1, pp. 5, 18-19).  On October 26, 2012, Plaintiff had a medical appointment, and Defendant Maue, along with another officer, came to escort him from his cell (Doc. 1, p. 18).  When Defendant Maue told Plaintiff to rush and hurry up, Plaintiff responded with an expletive, because he believed Defendant Maue would grab him and possibly dislodge the angio-seal (Doc. 1, p. 18-20).  Defendant Maue then wrote a "false" disciplinary report,

---

[2] § 1915(g) provides: "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."

stating that Plaintiff refused to obey an order to tuck in his shirt, and cursed the officers (Doc. 1, pp. 18, 31-33).  During this incident, Plaintiff does not allege that Defendant Maue touched him or used any physical force against him.  Ultimately, an unnamed supervisor provided a wheelchair to take Plaintiff to segregation (Doc. 1, p. 20).  Plaintiff was later found guilty of insolence and disobeying a direct order, and his punishment included one month of disciplinary segregation (Doc. 1, p. 33).

 Plaintiff had a second operation on October 28, 2012, in which a catheter was inserted into his penis.  Defendant Veath (a correctional officer) ordered Plaintiff to walk up stairs on October 30, and refused to contact the medical department to confirm that Plaintiff had a medical permit (Doc. 1, pp. 5, 21).  Following this, Plaintiff suffered swelling and bleeding from the catheter site.  *Id*.

On July 16, 2012, prior to the operations, Plaintiff had been given a different medical permit because of his poor circulation and pain with walking.  The permit included shower on gallery, front handcuffs, slow walk, low gallery/no stairs, low bunk, and circulation hose for his legs (Doc. 1, p. 16).  Despite the permit, however, Plaintiff was moved several times to cells far from the shower area, causing him to suffer pain from excessive walking (Doc. 1, pp. 6, 17).

Plaintiff also claims that he was denied access to the courts, apparently during the time he spent in segregation after Defendant Maue's disciplinary report.  His typewriter was confiscated, and he was denied law library privileges, legal supplies, and access to his legal storage (Doc. 1, p. 7).  Some legal mail was improperly opened.  *Id*.  In addition, his grievances were mishandled and he was prevented from using the grievance procedure (Doc. 1, p. 6).

**Motion for Leave to Proceed *In Forma Pauperis* ("IFP") (Doc. 2)**

As a preliminary matter, this Court must determine whether Plaintiff is "under imminent

danger of serious physical injury," such that this action should be allowed to proceed without full pre-payment of the filing fee, despite the fact that Plaintiff has "struck out." The United States Court of Appeals for the Seventh Circuit has explained that "imminent danger" within the meaning of 28 U.S.C. § 1915(g) requires a "real and proximate" threat of serious physical injury to a prisoner. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (citing *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)). In general, courts "deny leave to proceed IFP when a prisoner's claims of imminent danger are conclusory or ridiculous." *Id*. at 331 (citing *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003)). Additionally, "[a]llegations of past harm do not suffice" to show imminent danger; rather, "the harm must be imminent or occurring at the time the complaint is filed," and when prisoners "allege only a past injury that has not recurred, courts deny them leave to proceed IFP." *Id*. at 330 (citing *Abdul-Wadood v. Nathan*, 91 F.3d 1023 (7th Cir. 1996)).

In the case at bar, Plaintiff's complaint contains allegations that lead the Court to conclude that he could be under imminent danger of serious physical injury. Plaintiff is still within the 90-day surgical recovery period in which excessive physical exertion or trauma could result in serious or life-threatening injury, and prison officials' failure to heed the post-surgery medical restrictions could recur.

It is therefore **ORDERED** that Plaintiff's motion for leave to proceed IFP in this case (Doc. 2) is **GRANTED**. Pursuant to 28 U.S.C. § 1915(b), **IT IS ORDERED** that Plaintiff shall pay the **$350.00 filing fee** applicable to this civil action as follows:

1. Plaintiff shall pay an initial partial filing fee of $\underline{\$ \ 5.78}$. *See* 28 U.S.C. § 1915(b)(1). The agency having custody of Plaintiff is **DIRECTED** to transmit this amount from Plaintiff's prison trust fund account to the Clerk of Court upon receipt of this Memorandum and Order.

2. Plaintiff shall make monthly payments of 20% of the preceding month's income credited to Plaintiff's prison trust fund account until the filing fee is paid in full.

3. The agency having custody of Plaintiff shall forward payments from Plaintiff's account to the Clerk of this Court each time the amount in the account exceeds $10 until the filing fee is paid. Payments shall be mailed to: Clerk of the Court, United States District Court for the Southern District of Illinois, P.O. Box 249, East St. Louis, Illinois 62202.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated a colorable federal cause of action against Defendants Shepard and Veath for deliberate indifference to medical needs (Count 1), for ignoring and failing to implement Plaintiff's post-surgical orders after his October 2012 surgeries. In addition, because Plaintiff is seeking injunctive relief in regard to these medical needs, Defendants Atchinson (the Menard Warden) and Godinez (the Director of the Illinois Department of Corrections) shall remain in the action. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

Based on their past encounters, Plaintiff feared that Defendant Maue was going to harm him during the October 26, 2012, incident. However, the complaint does not allege that Defendant Maue had any physical contact with Plaintiff on that day or forced him to engage in any activity against the medical orders. Nor does Plaintiff indicate that he told Defendant Maue about his medical restrictions, or that Defendant Maue was otherwise aware of his condition. He thus fails to state a deliberate indifference claim against Defendant Maue.

Plaintiff does, however, state a cognizable claim against Defendant Maue for fondling Plaintiff's genitals while performing a search (Count 2). *See Washington v. Hively*, 695 F.3d

641, 643 (7th Cir. 2012) (prisoner stated an Eighth Amendment claim where guard fondled prisoner's genitals without justification). However, the complaint indicates that this incident (or incidents) took place well before Plaintiff's October 2012 surgeries. Thus, the claim asserted in Count 2 does not appear to arise from the same transaction, occurrence, or series of transactions or occurrences as the claim in Count 1. In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George,* 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)). Therefore, consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever Count 2 into a separate action, to be discussed further below.

      Plaintiff's other claims, however, fail to state any violation of his constitutional rights, and shall therefore be dismissed pursuant to § 1915A. These claims are: access to courts and interference with legal mail (Count 3); false disciplinary report/deprivation of liberty without due process (Count 4); mishandling of grievances (Count 5); and verbal harassment (Count 6).

      Prisoners have a fundamental right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). However, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). A prisoner's complaint must "spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Id.*

In the instant case, Plaintiff claims that several of his cases were dismissed due to his being in segregation or lockdown, where he was unable to access the law library or other resources (Doc. 1, p. 7).  However, he fails to identify any specific meritorious case, nor does he explain how any prison official's action caused him to lose the opportunity to pursue any legitimate claim.  Due to the fact that Plaintiff has been "struck out" since approximately 1997, it seems unlikely that he would be able to maintain "several" legitimate claims, at least in federal court.  Because Plaintiff has failed to explain the connection between the denial of access to legal materials or assistance, and his inability to pursue a legitimate case, *see Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004), he cannot maintain a claim for denial of access to the courts.

Plaintiff briefly states that his "clearly marked Attorney-Client Privilege" legal mail has been opened outside his presence (Doc. 1, p. 7).  However, he does not identify when or how often this occurred, or indicate which prison staff members may have been responsible.  Inmates' legal mail is entitled to protection in order to ensure access to the courts.  *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999).  The inadvertent or negligent opening of an occasional legal letter, however, will not give rise to a constitutional claim.  *See, e.g., Bryant v. Winston*, 750 F. Supp. 733 (E.D. Va. 1990).  Plaintiff's complaint does not contain sufficient factual allegations to indicate any constitutional violation.  Therefore, Count 3 shall be dismissed without prejudice.  If facts should exist to support a cognizable claim for denial of access to the courts or interference with legal mail, Plaintiff must bring those claims in a separate action, with the filing fee fully pre-paid.  As with Count 2, these claims do not arise from the same transaction or occurrence as the claims in Count 1.  *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007).

Count 4 consists of Plaintiff's claim that he was issued a false disciplinary report by

Defendant Maue, and improperly punished with one month of segregation imposed by Defendants Veath and Scott, who conducted the hearing on the charges (Doc. 1, pp. 15, 33).  In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed).  In addition, the decision to impose discipline must be supported by "some evidence."  *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).  This requirement may be satisfied even if the evidence offered by the inmate and the officer bringing the charge is contradictory.  The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan,* 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

  In reference to Count 4, Plaintiff gives no information to suggest any denial of procedural due process in the conduct of the disciplinary hearing on the allegedly false charge.  Moreover, even if Plaintiff was not afforded the procedural protections in *Wolff*, he still would not have an actionable claim based on the facts presented.

  When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  An inmate has a due process liberty interest in being in the general prison population only if the conditions

of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). The Seventh Circuit has recently elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original).

The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement"). Here, Plaintiff was given only one month of segregation. Under *Marion*, this short duration does not support a due process claim, particularly in light of Plaintiff's life sentence. Accordingly, Count 4 shall be dismissed with prejudice.

Count 5 includes Plaintiff's claim that his grievances were mishandled and he was denied access to the grievance procedure (Doc. 1, p. 6). However, the failure to consider or respond to grievances, as well as improper handling of grievances, does not implicate any constitutional

right.  Plaintiff's efforts to exhaust his administrative remedies by using the prison grievance process may be relevant in the event that a Defendant raises a challenge to Plaintiff's right to maintain a § 1983 suit over the substantive matters raised in the grievances.  Nonetheless, a Defendant's action or inaction in handling Plaintiff's grievances does not support an independent constitutional claim.  "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."  *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995).  The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution.  *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).  Furthermore, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim."  *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).  *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli*, 81 F.3d at 1430.  For these reasons, Count 5 shall be dismissed with prejudice.

Similarly, Plaintiff's complaint that Defendant Maue subjected him to verbal harassment (Count 6) states no claim.  While the Court does not condone unprofessional treatment of prisoners, abusive or offensive language does not violate the constitution.  *Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws").  *See also Patton v. Przybylski,* 822 F.2d 697, 700 (7th Cir. 1987) (the use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution).  Accordingly, Count 6 shall be dismissed with prejudice.

Finally, Defendants Menard Health Care Services Unit and Illinois Department of

Corrections ("IDOC") shall be dismissed as parties to this action. As a state agency, the IDOC is immune from a suit for money damages, and this immunity extends to a department within a state agency such as a prison health care unit. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment). While injuctive relief may be sought against an agency, the IDOC Director (Defendant Godinez), remains in this action for that purpose.

Defendant Lt. Menard and Defendant Adjustment Committee were added as parties in error, and shall be dismissed with prejudice. While the caption of Plaintiff's complaint appeared to name these entities as separate parties, an examination of Plaintiff's list of Defendants (Doc. 1, pp. 2, 14-15) indicates that "Lt. Menard Adjustment Committee" was merely a phrase describing Defendant Scott.

**Pending Motion for Appointment of Counsel (Doc. 3)**

Plaintiff's motion for appointment of counsel shall be referred to United States Magistrate Judge Frazier for further consideration.

**Temporary Restraining Order ("TRO")/Preliminary Injunction**

Although Plaintiff did not file a separate motion for injunctive relief, he clearly requests this in his complaint and attachments. Thus, the Court shall construe the request as a motion for TRO/Preliminary Injunction. Without opinion as to the ultimate merits of the motion, the Court's preliminary review dictates that Plaintiff's request for injunctive relief deserves prompt

consideration.

Therefore, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's motion for TRO and preliminary injunctive relief (contained in Doc. 1) is hereby **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for an evidentiary hearing and issuance of a report and recommendation.  Personal service on the Defendants shall be ordered.  Judge Frazier shall set an evidentiary hearing as soon as practicable, in light of the time necessary to effect service of summons and for receipt of the Defendants' responses to the motion for injunctive relief.  Any motions filed after the date of this Order that relate to the request for injunctive relief or seek leave to amend the complaint are also hereby **REFERRED** to Judge Frazier.

**Disposition**

COUNT 3 is **DISMISSED** without prejudice.  **COUNTS 4, 5, and 6** are **DISMISSED** with prejudice.

**DEFENDANT SCOTT** is **DISMISSED** from this action without prejudice. **DEFENDANTS LT. MENARD, ADJUSTMENT COMMITTEE,** and **MENARD HEALTH CARE SERVICES UNIT** are **DISMISSED** from this action with prejudice.  The Clerk shall terminate **DEFENDANT ILLINOIS DEPARTMENT OF CORRECTIONS** as a party.

**COUNT 2**, Plaintiff's fondling claim against Defendant Maue, which is unrelated to the remaining claim (Count 1 for deliberate indifference to medical needs), is **SEVERED** into a new case.  That new case shall be: Claim against **DEFENDANT MAUE** for fondling Plaintiff's genitals without justification.

The new case **SHALL BE ASSIGNED** to the undersigned District Judge for further proceedings.  In the new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order

(2)    The Original Complaint (Doc. 1)

Plaintiff is **ADVISED** that if, for any reason, he does not wish to proceed with the newly-opened case, he must notify the Court in writing within 35 days (on or before **January 7, 2013**). Unless Plaintiff notifies the Court that he does not wish to pursue the newly opened action, he **will be responsible for an additional filing fee** in the new case. In addition, because Plaintiff has "struck out" and the new action does not involve any imminent danger of serious physical injury, Plaintiff may only proceed in the newly severed case if he **pre-pays the $350 filing fee within the above deadline. Failure to timely pay the filing fee shall result in dismissal of the new case with prejudice**. Conversely, if Plaintiff timely informs the court that he will voluntarily dismiss the fondling claim against Defendant Maue, he will not be assessed a new filing fee, and the new case will be dismissed without prejudice. No service shall be ordered on Defendant Maue until after the deadline for Plaintiff's response.

**IT IS FURTHER ORDERED** that the *only claim remaining in this action is COUNT 1 against Defendants VEATH, ATCHINSON, GODINEZ, AND SHEPARD* for deliberate indifference to Plaintiff's medical needs following his October 2012 surgeries. This case shall now be captioned as: **MAURICE J. McDONALD, Plaintiff, vs. TIM VEATH, M. ATCHINSON, S.A. GODINEZ, and DR. SHEPARD, Defendants.**

**IT IS FURTHER ORDERED** that Defendant **MAUE** is **TERMINATED** from *this* action with prejudice.

As to **COUNT 1** (deliberate indifference to medical needs), the Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **VEATH, ATCHINSON, GODINEZ** and **SHEPARD**. The Clerk shall issue the completed summons, and prepare a service packet for each Defendant consisting of: the

completed summons, the completed form USM-285, a copy of the complaint (Doc. 1), and this Memorandum and Order.  The Clerk shall deliver the service packets for each Defendant to the United States Marshal Service for personal service on each Defendant.

Pursuant to Federal Rule of Civil Procedure 4, **within 14 days of the date of this Order**, the United States Marshals Service **SHALL personally serve** upon Defendants **VEATH, ATCHINSON, GODINEZ** and **SHEPARD**, the service packets containing the summons, form USM-285, a copy of the complaint (Doc. 1), and this Memorandum and Order.  All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.  The Court will not require Defendants to pay the full costs of formal service, as the Court is ordering personal service to expedite the resolution of Plaintiff's motion for injunctive relief.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Philip M. Frazier for further pre-trial proceedings, which shall include a determination on the pending motion for appointment of counsel (Doc. 2).

Further, this entire matter is **REFERRED** to United States Magistrate Judge Frazier for

disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 3, 2012**

                                             s/ J. PHIL GILBERT
                                             United States District Judge